**STATE ex HUBBELL et v MILLER**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16117.   Decided March 22, 1937

N. D. Davis, Cleveland, for plaintiffs.

Alfred Clum, Director of Law, Cleveland, and Henry S. Brainard. Asst. Director of Law, Cleveland, for defendant.

MONTGOMERY, PJ, SHERICK and LEMERT, JJ, (5th Dist) sitting by designation.

## OPINION

By SHERICK, J.

This is an original action in mandamus in this court, whereby the relators as tax-payers pray for a writ as against the respondent, Miller, as Clerk of Council of the City of Cleveland, commanding him to ascertain whether a certain referendum petition is signed by a sufficient number of qualified electors, and to do and perform all other acts in respect thereto imposed upon him by law.

A demurrer to the city's answer being withdrawn and a motion by the respondent for judgment on the pleadings having been made but not insisted upon, and by consent of the parties, the cause is submitted upon the pleadings. It is agreed that all material facts are to be found therein which this court may consider. The facts so shown are as follows:

Pursuant to §27 of the city's Charter, council did. on December 7th, 1936, pass Ordinance No. 105341 as an emergency measure. Its provisions fixed the salary of councilmen after Janpary 1, 1938. Three days after its passage the ordinance was signed by the Mayor. It thereby became immediately effective. On January 16, 1937, the fortieth day after the passage of the ordinance, the relator as member of a petitioning committee, filed with the respondent certain papers which were denominated as a referendum petition, under §59 of the Charter, which requested that council repeal the ordinance noted or submit the same to a referendum vote. This document bears the signature of 2742 petitioners. It is conceded that all such subscribers are qualified electors of the city.

The relator, without objection, presents a letter or notice of the respondent under date of February 1, 1937. It sets forth certain figures found in the pleadings which are important by reason of certain other pleaded charter provisions that will be hereinafter noted. It is stated that the total vote cast at the last preceding regular municipal election was 276,538 and that ten percent thereof is 27,654. It is therein pointed out that inasmuch as the referendum petition subscribers only number 2742 it is "obviously insufficient even if all of such signatures are those of qualified electors of the city." It is stated that the respondent had not checked the petition to determine the validity of the signatures and certified "said referendum petition as insufficient."

Section 64 of the Charter prescribes that emergency ordinances are subject to referendum as are other ordinances. §59 thereof provided that a referendum may be had if petitioned for within forty days "by electors equal in number to ten percent (10%) of the total vote cast at the last preceding regular municipal election."

Section 60 requires that the sufficiency of a referendum petition be ascertained in the same manner as the sufficiency of initiative petitions are determined and that "if the petition be found sufficient, or be rendered sufficient by amendment as pro-

vided in §§52, 53 and 54 hereof, the clerk shall certify that fact to the council."

Section 51 provides that when a petition is filed "the clerk shall ascertain whether it is signed by the required number of qualified electors."

Sections 52 and 53 read as follows:

"**Section 52:** If the clerk's certificate shows that the petition is insufficient he shall at once notify each member of the committee of the petitioners, hereinbefore provided for, and the petition may be amended at any time within fifteen (15) days from the date of the clerk's certificate of examination, by filing with the clerk an additional petition paper or papers in the same manner as provided for the original petition."

"**Section 53:** Upon the filing of such an amendment, the clerk shall, within ten (10) days thereafter, examine the amended petition and attach thereto his certificate of the result * * *."

The further fact appears that on February 16, 1937, within fifteen days of the clerk's endorsement of insufficiency in the original petition, an additional or amendatory petition was filed with the clerk, subscribed by 33,407 qualified electors. The respondent has never inquired as to the sufficiency of the amendatory petition.

The question therefore is presented for this court's solution, whether the filing of the original petition subscribed to by less than one percent of the qualified electors, constitutes a compliance with the provisions of the charter granting the right to a referendum so as to permit its subsequent amendment within the fifteen day period prescribed by §52? In other words, do the provisions of Cleveland's charter require that an original petition for a referendum be sufficient on its face, that is ostensibly subscribed by electors equal to ten percent of the number of votes cast at the last preceding general municipal election, before the same may be lawfully amended? Or, is the provision of §59 respecting ten percent, entirely subservient to §52, which provides for amendment to petition, as the relator would have it. The law department on the other hand insists that the ten percent provision creates a condition precedent to the right of referendum and that substantial compliance therewith is mandatory.

We are mindful of the fact that the adoption of the charter was the act of the people of Cleveland in their desire for mu-

nicipal home rule. They, without doubt, desired to be able to speak to their elected representatives through the medium of initiative and referendum petitions, and to that end it was seen fit to expressly provide for the exercise of this right but subject to certain restrictions and the right of majority rule. By §49 of its charter it was provided that 5000 electors might initiate an ordinance by petitioning council, but in view of the fact that the people might have already legislated through its council, it was deemed wise that a substantial minority was necessary to procure a referendum on a law then in effect or about to become operative. To that end, the people prescribed that the sincerity of petitioners for a referendum be evidenced by a petition which, on its face, disclosed it to be subscribed by electors equal in number to ten percent of the vote cast at the last preceding general municipal election. If it was intended that one percent might so petition the people undoubtedly would have so prescribed instead of the ten percent as directed. If the relators are right in their theory, then any number of electors from one up may so petition.

It is a cardinal rule of both constitutional and statutory construction that when two provisions pertain to related subject matter that each should receive that construction which should give full expression to both sections if the same be possible and not that one be so construed as to nullify the clear expression of the other. If we were to hold that the amendatory section is all controlling, it would be to deny the efficacy of the ten percent provision and make it meaningless. If it be held as we do hold that the ten percent provision pertaining to a referendum petition is a condition precedent to the exercise of that right, it is to give full force and effect to both sections adopted at the same time for the creation of a comprehensive and complete mode of procedure in such a case.

As we see it, it is not a matter of strict or liberal construction in this controversy, but rather the giving of expression in both instances to the electorates' requirements. The views entertained are without judicial precedent in this state. In **Ohio Valley Electric Railway Co. v Hagerty, 14 Oh Ap 398,** it is said:

"The power of a minority of the electors to force proposed legislation to a referendum includes the power to suspend such

legislation until the next regular election and can only be exercised by fully complying with all the provisions prescribed for such referendum."

In City of Dayton v Railway Co., 16 Fed. (2nd) 401, it is reasoned that:

"The existence of the required minimum basis for this extraordinary exercise of legislative power seems to be so fundamental that in its absence there is nothing for the later structure to stand upon. In a fair sense it is jurisdictional."

In Dillon v Cleveland, 117 Oh St 258, is found a case where a petition was sufficient on its face, such being true it was susceptible of amendment. That is not the fact in this case. Here is found a petition signed by less than one percent. It was not sufficient on its face. That being true, the clerk was not required to inquire into its sufficiency and to notify the petitioner's committee. It spoke for itself. It was self-evident to the petitioners.

It is argued that a petition sufficient on its face may be fraudulent in its major portion or entirely fraudulent and that the law would thereby countenance and approve of fraud. Such is not the proper legal conclusion. If it was entirely fraudulent it would be found insufficient in its entirety and be in fact no petition. If fraudulent only in part then those electors motivated to subscribe the petition without participation in the fraud might be and are protected by the right to procure additional signatures and to amend the original petition.

It is regrettable that the amendatory petition was not the original petition and filed within the forty-day period. We may not, however, transpose the facts as we find them, but are bound by the sequence of events as such appear. The people of Cleveland established the forty-day period. It is not for this court to substitute a different date, but to give expression to the limitation prescribed. It is for the Cleveland electorate to determine otherwise and not for a court to defeat their prescribed requirements.

For the reasons assigned the writ must be and is denied and the petition dismissed.

MONTGOMERY, PJ, concurs.
LEMERT, J, dissents.